**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**Gloria Jones and Christopher Jones, individually, and on behalf of all other persons similarly situated,**

**Plaintiffs,**

v.

**Century 21; Household Retail Services Inc., a foreign corporation, and REDO L.L.C., a foreign corporation.,**

**Defendants.**

**Civil No. 00-2161 (JRT/SRN)**

**REPORT AND RECOMMENDATION**

---

Thomas Lyons Sr., Esq. on behalf of Plaintiffs Gloria and Christopher Jones.

Anthony Clark, Esq., on behalf of Defendant Century 21.

Kimberly Fleming, Esq. on behalf of Defendant Household Retail Services, Inc.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

The above-entitled matter came before the undersigned United States Magistrate Judge on December 13, 2000. Both Defendant Century 21 and Defendant Household Retail Services, Inc. ("HRS") brought motions for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c). (Doc. Nos. 10, 17.) These motions have been referred to the undersigned pursuant to 28 U.S.C. § 636 and Local Rule 72.1. (Doc. No. 14.) The third Defendant, REDO L.L.C. ("REDO"), has not appeared in this case.



FILED FEB 13 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

For the reasons set forth below, this Court recommends that Defendant Century 21's motion be granted with prejudice as to Count IV and without prejudice and with leave to amend the Complaint as to all other Counts. Similarly, this Court recommends that Defendant HRS' motion be granted with prejudice as to Count IV and without prejudice and with leave to amend the Complaint as to all other Counts.

**BACKGROUND**

In May or early June 1997, Plaintiff Gloria Jones was solicited by an "apparent representative of Century 21" at a home improvement booth, located inside a local mall, to purchase windows. (Compl. ¶ 17.) On June 18, 1997, another "apparent representative of Century 21 using the name, logo and national reputation of Century 21" visited Plaintiff Gloria Jones at her home to discuss home improvements, installation, and credit terms.[1] (Compl. ¶ 18.)

The representative determined that Plaintiff Gloria Jones was not creditworthy, and asked Gloria's son Christopher Jones about his credit. (Compl. ¶ 19.) The representative then contacted Defendant HRS to check Plaintiff Christopher Jones' credit. (Compl. ¶ 20.) Plaintiff Christopher Jones was approved for credit, and he signed the Purchase Contract for the home improvements. (Compl. ¶ 21.) The Purchase Contract made the following statements: (1) "Century 21 Windows, Sold furnished and installed by REDO, L.L.C.," and (2) REDO is "independently owned and operated under the CENTURY 21 Network." (Compl. Ex. 2.) According to Plaintiffs, this document did not contain credit terms. (Compl. ¶ 21.) On the same

---

[1]This representative is also referred to generally as "Defendants' agent" and "Defendant REDO's agent." (Compl. ¶¶ 19-20.)

day, Plaintiff Christopher Jones also signed an Application for Credit and a Credit Sales Slip for the home improvements. (Lewis Aff., Doc. 19, Ex. A.)

The representative told Plaintiffs that the sale would be a credit sale for a one-time installation of home improvement materials and that the monthly payment would be $78 per month. (Compl. ¶¶ 20-21.) After the repairs were completed, both Plaintiff Gloria Jones and Plaintiff Christopher Jones signed a completion certificate.[2] (Compl. ¶ 22; Compl. Ex. 3.) Sometime after September 10, 1997, Plaintiffs received a "statement of account" that, according to Plaintiffs, disclosed the credit terms for the first time. (Compl. ¶ 23; Compl. Ex. 4.) Thereafter, "Defendants" allegedly engaged in a pattern of confusing billing statements whereby the finance charge varied from 16.90% to 19.75%, and the due date changed without notice. (Compl. ¶¶ 24-25, Compl. Exs. 5, 6, 7.)

On August 21, 2000, Plaintiffs filed a Complaint on their own behalf and on behalf of all other persons similarly situated against Century 21, HRS, and REDO.[3] Plaintiffs allege that

---

[2]The completion certificate is the only document that Plaintiff Gloria Jones signed.

At the December 13, 2000, hearing, Defendant HRS clarified that Plaintiff Gloria Jones was not liable for the home improvement debt because the Application for Credit states that HRS waives "any security interest in your home if the goods are installed." (Lewis Aff., Doc. 19, Ex. A, ¶ 23.) The Completion Certificate represented that "all work has been satisfactorily completed." (Compl. Ex. 3.) Therefore, according to Defendant HRS, Plaintiff Christopher Jones is solely responsible for the debt. Plaintiff Christopher Jones signed the Purchase Contract, the Application for Credit and the Credit Sales Slip, the other relevant documents at issue in this case. (Compl. Ex. 2, Lewis Aff., Doc. 19, Ex. A.)

[3]The Complaint was originally filed in the State of Minnesota, Tenth Judicial District Court, County of Washington. Both Defendant Century 21 and Defendant HRS removed this matter to the United States District Court for the District of Minnesota based on diversity jurisdiction. (Notice of Removal, Doc. Nos. 1, 2.)

Defendants (1) violated Minn. Stat. § 47.59 by unilaterally changing the finance charge terms without notice; (2) violated Minn. Stat. § 325D.44 by selling goods and services without disclosing the credit terms; (3) violated Minn. Stat. § 325F.69 by intentionally making material misrepresentations regarding the interest rates, finance charges, and late fees; (4) violated Minn. Stat. § 325G.40 by failing to disclose the interest rate and late payment fees and failing to adequately notice changes to both; and (5) were unjustly enriched by their illegal conduct in an amount greater than $50,000. (Compl., pp. 6-9.)

## ANALYSIS

### I. Standard of Review

Defendants may bring a Rule 12(c) motion for judgment on the pleadings, after the close of the pleadings, to raise various Rule 12(b) defenses. The Court must apply the standard of review applicable to the corresponding 12(b) motion. Fed. R. Civ. P. 12(c) and 12(h)(2); St. Paul Ramsey County Medical Center v. Pennington County, S.D., 857 F.2d 1185, 1187 (8th Cir. 1988).

"This court must accept as true all facts pled by the non-moving party, and grant all reasonable inferences from the pleadings in the non-moving party's favor." National Car Rental System, Inc. v. Computer Assocs. Intern., Inc., 991 F.2d 426, 428 (8th Cir. 1993). Judgment on the pleadings is not appropriate unless the moving party has "clearly establishe[d] that no material issue of fact remains to be resolved and he is entitled to judgment as a matter of law." Iowa Beef Processors, Inc. v. Amalgamated Meat Cutters & Butcher Workmen of N. America, AFL-CIO, 627 F.2d 853, 855 (8th Cir. 1980).

"When considering a motion for judgment on the pleadings . . . the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, . . . as well as materials that are necessarily embraced by the pleadings." Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (quotations omitted). The pleadings include the complaint, the answer, and any written instruments attached as exhibits. Fed.R.Civ.P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is part thereof for all purposes.").

## II. Claims Against Defendant Century 21

Defendant Century 21 argues that all claims against it should be dismissed for failure to state a claim because (1) Plaintiffs did not allege any direct wrongdoing on behalf of Century 21, and (2) Plaintiffs did not properly allege that Century 21 is liable for the actions of REDO or HRS under a theory of apparent authority. (Def. Century 21's Mem. in Supp. of Mot., Doc. No. 11, p. 3.)

### A. Direct Wrongdoing by Century 21

Defendant Century 21 asserts that the Complaint does not allege that Century 21 itself acted wrongfully. (Def. Century 21 Mem. in Supp. of Mot., Doc. No. 11, p. 3.) Plaintiffs assert that "Century 21 by its own conduct of placing the solicitation materials in the hands of others violated several Minnesota consumer fraud statutes." (Pls.' Mem. in Opp. to Def. Century 21's Mot., Doc. No. 12, p. 7.) At the December 13, 2001, hearing, Plaintiffs' counsel elaborated on Defendant Century 21's direct involvement. Plaintiffs asserted that (1) the transaction at issue in this case was initiated because Plaintiffs were presented with a Century 21 brochure, (2) the

salesman used a Purchase Contract that contained Century 21's name, and (3) Century 21 is likely to have received some money from the transaction. According to Plaintiffs, these actions demonstrate that Defendant Century 21 was involved in the transaction from beginning to end and therefore must have participated in the alleged illegal "scheme."

Despite Plaintiffs' assertions, Plaintiffs fail to connect any direct action by Defendant Century 21 with the alleged misconduct. The Complaint does not allege any facts to support a claim that Century 21 itself acted inappropriately. For example, the Complaint does not allege that Defendant Century 21 was directly involved in the person to person sale of the home improvements, financing the home improvements, or misrepresenting the credit terms. The Court is mindful that it must construe the Complaint, and all reasonable inferences arising therefrom, most favorably to the pleader. Concerned Citizens of Nebraska (CCN) v. United State Regulatory Commission (NRC), 970 F.2d 421, 425 (8th Cir. 1992) (citing United States v. Mississippi, 380 U.S. 128, 143, 85 S.Ct. 808, 816, 13 L.Ed.2d 717 (1965), However, the Complaint is devoid of any direct assertions that Century 21 was involved in the allegedly fraudulent transaction and the Court is unable to draw any such reasonable inferences from the Complaint. Rather, any inferences point to an assertion of apparent authority, not direct liability. Therefore, a claim that Defendant Century 21 is directly liable for the alleged illegal activity cannot stand. See Conley v. Gibson, 355 U.S. 41, 45-47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (a motion to dismiss may be granted when there are not set of facts that would entitle a plaintiff to relief).

**B. Apparent Authority**

In addition to direct liability, Plaintiffs also assert that Defendant Century 21 is liable for the allegedly deceptive and fraudulent transactions because Defendant REDO and Defendant HRS acted with the apparent authority of Defendant Century 21. Defendant Century 21 asserts that all claims against it should be dismissed because Plaintiffs' Complaint fails to properly allege an apparent authority relationship. (Def. Century 21's Mem. in Supp. of Mot., Doc. No. 11, p. 3.)

Apparent authority is "created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him." [4] Duluth Herald & News Trib. v. Plymouth Optical Co., 286 Minn. 495, 498, 176 N.W.2d 552, 555 (1970) (quoting Restatement (Second) of Agency § 27 (1958)). In order to establish apparent authority, Plaintiffs must demonstrate the following: (1) the principal must have held the agent out as having authority, or must have knowingly permitted the agent to act on its behalf; (2) the party dealing with the agent must have actual knowledge that the agent was held out by the principal as having such authority or had been permitted by the principal to act on its behalf; and (3) the proof of the agent's apparent authority must be found in the conduct of the

[4]An agent can have (1) actual authority, which is comprised of express or implied authority, or (2) apparent authority. Express authority is directly granted to the agent from the principle. Hockemeyer v. Pooler, 268 Minn. 551, 130 N.W.2d 367 (1964). Implied authority includes the duties that are essential to carry out the express authority; it is actual authority circumstantially proved. Tullis v. Federated Mut. Ins. Co., 570 N.W.2d 309, 311 (Minn. 1997). Apparent authority is not actual authority but is that which a principal holds an agent out as possessing, or knowingly permits an agent to assume. Foley v. Allard, 427 N.W.2d 647, 652 (Minn. 1988).

principal, not the agent. Truck Crane Service Co. v. Barr-Nelson, Inc., 329 N.W.2d 824, 826 (Minn. 1983); Hockemeyer v. Pooler, 268 Minn. 551, 562,130 N.W.2d 367, 375 (1964).

In their Memorandum in Opposition to Defendant Century 21's Motion for Judgment on the Pleadings, Plaintiffs admit that they did not make allegations of apparent authority, but instead assert that Minnesota consumer fraud statutes do not require allegations of apparent authority. (Pls.' Mem. in Opp. to Def. Century 21's Mot., Doc. No. 12, pp. 5-6.) However, at the December 13, 2000, hearing, Plaintiffs clarified their position and stated that they intended to allege both a claim of direct liability and apparent authority.

The Complaint does contain the words "apparent representative;" however, the references to this representative throughout the Complaint are inconsistent. For example, the Complaint states that an "*apparent representative of Century 21*" visited Plaintiff Gloria Jones at her home on June 18, 1997. (Compl. ¶ 18.) It then goes on to state that "*Defendants' agents*" assessed her creditworthiness, but does not state to whom Plaintiffs are referring. (Compl. ¶ 19.) In the next paragraph, Plaintiffs admit that HRS approved her credit and that Defendant "*REDO's agent*" told Plaintiffs that the monthly payment would be $78. (Compl. ¶ 20.) These allegations appear to refer to the same salesman who visited Plaintiff Gloria Jones at her home on June 18, 1997. However, it is unclear from the Complaint, who the salesman is alleged to represent – Century 21, REDO, or HRS.

Furthermore, the Complaint does not contain sufficient facts to support the bare allegation of agency. A complaint relying on agency must plead facts to establish the existence of an agency relationship; it is insufficient to merely plead the legal conclusions of agency.

Gunderson v. ADM Investor Services, Inc., 85 F.Supp.2d 892, 905 (N.D. Iowa 2000) (discussing similar approaches to pleading agency in other districts). "[A]s a prerequisite to holding that defendant's agent was acting within his apparent authority, one must point to some conduct on the part of defendant * * * which, reasonably interpreted, would have caused the plaintiffs to believe that [the defendant] consented to the actions of [the agent]." Hagedorn v. Aid Association for Lutherans, 297 Minn. 253, 211 N.W.2d 154, 158 (1973).

Plaintiffs claim that the Century 21 brochures and sales materials are sufficient evidence of apparent authority. However, the Century 21 sales materials indicate the existence of a license or a franchise relationship and the state that REDO was independently owned and operated under the Century 21 Network. (Compl. Exs. 1, 2.) The use of the Century 21 logo and brochures, without more, is insufficient to establish apparent authority. Pona v. Cecil Whittaker's, Inc., 155 F.3d 1034, 1036 (8th Cir. 1998) (the mere fact that a franchisor's sign appeared on a building and the employees wore uniforms with the franchisor's logo "did not clothe a franchisee with the apparent power to act on the franchisor's behalf in anything approaching a general way.").

The Complaint contains only bare legal conclusions regarding agency and fails to allege any facts that would support a claim that either REDO or HRS were apparent agents of Century 21. Therefore, the Court recommends that Defendant Century 21's motion for judgment on the pleadings be granted.[5]

---

[5]The Court recommends that Counts I, II, III, and V be dismissed without prejudice and with leave to amend the Complaint and that Count IV be dismissed with prejudice. See Section III of this Report and Recommendation for a discussion of the allegations plead for each Count of the Complaint.

## III. Claims Against Defendant HRS

### A. Count I: Minn. Stat. § 47.59

Count I of the Complaint alleges that Defendants unilaterally changed the interest rate on their loan without notice in violation of Minn. Stat.§ 47.59. (Compl. ¶ 29.) Defendant HRS asserts that this claim should be dismissed because: (1) Plaintiffs' Complaint does not allege a violation of Minn. Stat. § 47.59, and (2) HRS was organized under Nevada law and therefore Minn. Stat. § 47.59 does not apply.

Minnesota Statute Section 47.59 regulates the "maximum rates" for the extension of credit by financial institutions. Although section 47.59 comprehensively describes the applicable procedures and rules for credit applications, finance charges, and other charges, it does not mention anything about an unnoticed unilateral change in interest rate, as Plaintiffs claim in the Complaint. (Compl. ¶ 29.) Section 47.59 further states that: "This subdivision does not limit or restrict the manner of calculating the finance charge, whether by way of add-on, discount, discount points, precomputed charges, single annual percentage rate, variable rate, interest in advance, compounding, average daily balance method, or otherwise, if the annual percentage rate does not exceed that permitted by this section." Minn. Stat. § 47.59, subd. 3(d).

Plaintiffs do not dispute these facts, but instead point the Court to Minn. Stat. § 47.59, subd.1(j), which states, in relevant part, the following:

> "Finance charge" has the meaning given in the Code of Federal Regulations, title 12, part 226, except that the following will not in any event be considered a finance charge:
>
> (1) a charge as a result of default or delinquency under subdivision 6 if made for actual unanticipated late payment, delinquency,

> default, or other similar occurrence, and a charge made for an extension or deferment under subdivision 6

(Pls.' Mem. in Opp. to Def. HRS' Mot., Doc. No. 20, pp. 4-5.) Plaintiffs seem to suggest with this citation that the increase in interest rates was not a finance charge because the increase occurred only after late payments were made, and that this is a violation of section 47.59. (Id.) However, such a claim is utterly absent in the Complaint.

Furthermore, it seems that Minn. Stat. § 47.59 does not govern the parties' credit terms, and additionally may not apply to the ambiguous claims that Plaintiffs are attempting to allege. The Credit Terms attached to the Credit Application state that:

> This agreement will be governed by the Nevada law and applicable federal law, whether or not you live in Nevada . . . All terms and conditions of this Agreement (including the change of terms provision, the applicable law provision, and the finance charge, late charge, returned check charge and over-limit fee provision) are deemed to be interest under this Agreement and material to the determination of the finance charge.

(Lewis Aff., Doc. 19, Ex. A ¶ 28.) Plaintiffs did not address Defendant HRS' contention that Nevada law governs the credit transaction in their memorandum in opposition to Defendant HRS' motion. Nor did Plaintiffs clarify this point at the December 13, 2001, hearing.

After reading Plaintiffs' memorandum, it is unclear whether Plaintiffs believe that Minnesota or Nevada law applies or what specific claim they are bringing under any state's laws. This confusion was not clarified at the December 13, 2001 hearing, nor could any such discussion have remedied defects in the pleadings. However, what is clear it that the Complaint fails to state a claim that Defendant HRS violated Minn. Stat. § 47.59. Therefore, the Court

recommends that Defendant HRS' motion for judgment on the pleadings be granted as to Count I without prejudice with leave to amend the Complaint.

**B. Count II: Minnesota Deceptive Trade Practices Act, Minn. Stat. § 325.D.44 Count III: Minnesota Consumer Fraud Act, Minn. Stat. § 325F.69**

In Count II and Count III of the Complaint, Plaintiffs allege related claims under two Minnesota consumer protection statutes. In Count II, Plaintiffs allege that Defendants deceptively sold goods and services by representing unknown credit terms in violation of Minn. Stat. § 325D.44. In Count III, Plaintiffs allege that Defendants materially misrepresented information regarding the interest rate, finance charges, and late fees in violation of Minn. Stat. § 325F.69. (Compl. ¶¶ 32, 36.) Defendant HRS argues that Plaintiffs have failed to state a claim under either statute because: (1) Plaintiffs did not plead fraud with particularity; and (2) the averments in Plaintiffs' Complaint contradict the express agreements between the parties and therefore do not allege violations of Minn. Stat. § 325D.44 or Minn. Stat. § 325F.69. (Def. Mem. in Supp. of Mot., Doc. No. 18, pp. 9-10.)

The Minnesota Deceptive Trade Practices Act prohibits thirteen deceptive trade practices, and specifically prohibits a person, in the course of business, from engaging in conduct which "creates a likelihood of confusion or of misunderstanding." Minn. Stat. § 325D.44. Similarly, the Minnesota Prevention of Consumer Fraud Act prohibits, inter alia, the use of fraud, misrepresentation, or misleading statements, with the intent that others rely on the statement, in connection with the sale of merchandise. Minn. Stat. § 325F.69. "In passing consumer fraud statutes, the legislature clearly intended to make it easier to sue for consumer fraud than it had been to sue for fraud at common law. The legislature's intent is evidenced by the elimination of

elements of common law fraud, such as proof of damages or reliance on misrepresentations." State by Humphrey v. Alpine Air Prods., Inc., 500 N.W.2d 788, 790 (Minn.1993).

Defendant HRS argues that despite having a broader construction, statutory fraud claims under the consumer protection statutes still must be plead with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure. Plaintiffs acknowledge that common law fraud claims are subject to 9(b)'s heightened pleading requirements, but deny that statutory fraud claims fall within the same strict standard. Plaintiffs argue that because Minnesota's consumer fraud statutes have been construed more broadly than common law fraud, Rule 9(b) does not apply. (Pls.' Mem. in Opp. to Def. Century 21's Mot., Doc. No. 12, pp.7-8.)

"Notwithstanding the relative breadth of the consumer protection statutes, Rule 9(b) applies where, as here, the gravamen of the complaint is fraud." Tuttle v. Lorillard Tobacco Co., 118 F.Supp.2d 954, 963 (D. Minn. 2000). Rule 9(b) requires that in "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be pled with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." In order to meet the heightened pleading requirement, Plaintiffs must allege the "who, what, when, where, and how: the first paragraph of any newspaper story." Parnes v. Gateway 2000, Inc., 122 F.3d 539, 549-50 (8th Cir. 1997).

In support of their claim under Minn. Stat. § 325D.44 and Minn. Stat. § 325F.69, Plaintiffs direct the Court's attention to paragraphs 17-27 of the Complaint which state that: (1) Plaintiff Gloria Jones was solicited by a representative of Century 21; (2) the representative used the Century 21 name, logo, and national reputation to sell the products; (3) after approving

Plaintiff Christopher Jones' credit, REDO's agent told Plaintiffs that the loan payment would be $78 per month; (4) that the Purchase Agreement did not contain credit terms; (5) the first disclosure of terms was provided sometime after the billing date of September, 10, 1997; (6) Defendants subsequently engaged in a practice and pattern of confusing billing statements where the finance charge varied from 16.90% to 19.76%; and (7) Defendants changed the due date without notice.

Plaintiffs' allegations are nothing more than sweeping conclusory allegations of allegedly improper conduct on the part of Defendants and do not provide the particularity nor actual averments of fraudulent conduct as required by 9(b). "Because one of the main purposes of the rule is to facilitate a defendant's ability to respond and to prepare a defense to charges of fraud, conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." Commercial Property Invs., Inc. v. Quality Inns Int'l, Inc., 61 F.3d 639, 644 (8th Cir. 1995). The Complaint relies on the following legal conclusions: "Defendants subsequently engaged in a practice and pattern of confusing billing," "As a result of Defendants' deception, consumer class members . . . have paid to Defendants in excess of $50,000," and through Defendants' use of "fraud, false pretenses, false promises, misrepresentations, misleading statements and deceptive trade practices" they materially misrepresented the interest rate and finance charge. (Compl. ¶¶ 24, 33, 36.) Despite these contentions, Plaintiffs do not identify what actions were fraudulent, misleading, false or deceptive. For example, the Complaint states that the salesman represented that the monthly payments would be $78. (Compl. ¶ 20.) However, the Complaint does not go on to say that this fact was ultimately

untrue. Plaintiffs later explained in their memorandum that the $78 was only the minimum payment and this fact was not explained to them. (Pls.' Mem. in opp. to Def. Century 21's Mot, Doc. No. 12, p. 4.) However, the additional support in Plaintiffs' memorandum and the argument offered at the December 13, 2000, hearing, are not appropriate support for the Complaint. When considering the adequacy of a complaint, the Court "looks only to factual allegations in the complaint . . . any allegation made in subsequent legal memoranda cannot correct inadequacies within a complaint." Tuttle, 118 F.Supp.2d at 959. The Complaint fails to advise Defendants of the actions constituting a misunderstanding or fraud and cannot support a claim under either Minn. Stat. § 325D.44 or Minn. Stat.§ 325F.69. The Court therefore recommends that Defendant HRS' motion for judgment on the pleadings be granted as to Count II and Count III without prejudice with leave to amend the Complaint.[6]

**C. Count IV: Minnesota Credit Card Disclosure Act, Minn. Stat. § 325G.40**

Count IV alleges that "Defendants' failure to disclose the interest rate and late payment of fees and failure to give adequate notice of changes to both were in violation of Minn. Stat. § 325G.42." (Compl. ¶ 40.) Defendant HRS argues that the Complaint does not allege a violation of Minn. Stat.§ 325G.42 because (1) the statute does not prohibit changing the interest

---

[6]The Court is aware that Defendant HRS has presented an additional argument with respect to Plaintiffs' two fraud claims. Because the Court recommends that these claims be dismissed for failure to plead with particularity, Defendant's alternative argument will not be addressed at this time. However, the Court notes that the Complaint makes no mention of the information contained in the exhibits or the documents incorporated by reference to the exhibits. For example, the Purchase Agreement and the Application for Credit, both signed on June 18, 2000, appear to contain the applicable credit terms for the transaction.

rate without notice, and (2) the express agreements of the contract demonstrate that Plaintiffs' allegations are not credible. (Mem. in Supp. of Def. HRS' Mot, Doc. No. 18, p.10-11.)

Minnesota statute section 325G.42 governs the necessary disclosures for credit card applications distributed in Minnesota. According to Minn. Stat. § 325G.42 a credit card application must disclose the following terms, if applicable:

> (1) Any periodic rate or rates that may be applied to the account, expressed as an annual percentage rate or rates. If the account is subject to a variable rate, the creditor may disclose the rate as of a specific date and indicate that the rate may vary, or may identify the index and any amount or percentage added to, or subtracted from, that index and used to determine the rate. For purposes of this section, the amount or percentage must be referred to as the "spread." If charges incurred by use of the credit card are due and payable upon receipt of a periodic statement of charges, then that fact must be disclosed.
>
> (2) Any membership, participation, or similar fee that may be imposed as a condition of the issuance or renewal of a credit card, expressed as an annual amount.
>
> (3) Any minimum, fixed, transaction, activity, or similar charge.
>
> (4) Any other fees that may be charged to the account, including late payment fees and charges for exceeding credit limits.
>
> (5) The date or occasion upon which the finance charge, if any, begins to accrue on a transaction.

The other four subdivisions of Minn. Stat. § 325G.42 delineate the form of disclosures, the option of providing a disclosure chart, additional disclosures permitted under the section, and exceptions for non-credit card materials. Minn. Stat. § 325G.42, subds. 2, 3, 4. No where in Minn. Stat. § 325G.42 is there mention of noticing changes in interest rates and late payment fees. Therefore, Plaintiffs' claim that they were not given notice of interest rate and finance rate

changes cannot stand under Minn. Stat. § 325G.42, and the Court recommends that Defendant HRS' motion for judgment on the pleadings be granted with prejudice as to this claim.

Additionally, Plaintiffs' claim that the interest rate and late-fee payment were not disclosed, fails as well. According to the Purchase Contract, the Application for Credit, and Credit Terms, Plaintiffs were advised of the applicable credit terms.[7] (Compl. Ex. 2, Lewis Aff., Doc. 19, Ex. A.) A home improvement salesman visited Plaintiffs on June 18, 1997. On that same day, Plaintiff Christopher Jones signed a Purchase Agreement, which stated "[i]f this is a credit transaction, the agreement for credit is contained in a separate document which is incorporated herein by reference and made a part thereof. Credit documents will contain information as to scheduled payments and interest rate." (Compl. Ex. 2.) The Application for Credit, referred to in the Purchase Agreement, was also signed on June 18, 1997. The Application for Credit contained the Terms of Credit provision, which specifically disclosed information about the billing statement, minimum monthly payment, finance charges, credit limit, late payment of fees, change of terms, and default in addition to other items. (Lewis Aff., Doc. No. 19, Ex. A, ¶¶ 4, 6, 8, 10, 11, 13, 14.)

---

[7]The Application for Credit and Credit Terms were not attached as exhibits to the Complaint, however, the Court will consider them for the purpose of these motions. As stated above, on a Rule 12(c) motion the Court may consider the pleadings and all material necessarily embraced by the pleadings. This includes the policies that are the subject of this litigation and all documents incorporated by reference. Piper Jaffray Cos., Inc. v. National Union Fire Ins. Co. of Pittsburgh, Pa., 967 F.Supp. 1148, 1152 (D. Minn. 1996); see also Vizenor v. Babbitt, 927 F.Supp. 1193, 1198 (D. Minn. 1997) (when a plaintiff fails to introduce a pertinent document as part of his pleading, defendant may introduce the exhibit as part of his motion attacking the pleading).

The information contained in the Purchase Agreement, Application for Credit, and Credit Terms, refutes Plaintiffs' allegations. "When a disparity exists between the written instruments annexed to the pleadings and the allegations in the pleadings, the written instrument will control." Wright & A. Miller, Federal Practice and Procedure § 1327, at 766-68 (1990). It is clear from the exhibits that Plaintiffs were aware of the credit terms at the time of purchase. Therefore, Plaintiffs may not properly allege that credit terms were not disclosed. The Court recommends that Defendant HRS' motion for judgment on the pleadings be granted with prejudice as to Count IV.

**D. Count V: Unjust Enrichment**

Count V asserts that "Defendants have profited by their illegal conduct and have been unjustly enriched in an amount greater than $50,000." (Compl., ¶ 43.) Defendant Century 21 asserts that Plaintiffs' unjust enrichment claim cannot stand because an express contract governs the parties' relationship.

> The doctrine of unjust enrichment or recovery in quasi contract applies to situations where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another, the courts imposing a duty to refund the money or the use value of the property to the person to whom in good conscience it ought to belong.

66 Am.Jur.2d Restitution § 11 (1973); see also Klass v. Twin City Fed. Sav. & Loan Ass'n, 291 Minn. 68, 71, 190 N.W.2d 493, 494-95 (1971). However, an action based on unjust enrichment is not available when there is an express written contract that encompasses the subject matter of

the parties' dispute. Midwest Sports Mktg. Inc. v. Hillerich & Bradsby of Canada, Ltd., 552 N.W.2d 254, 268 (Minn. Ct. App. 1996).[8]

Plaintiffs recognize the Midwest Sports principle, but argue that the express contract does not preclude a claim of unjust enrichment because the contract was obtained through fraudulent and illegal tactics and is therefore voidable. (Pls.' Mem. in Opp. to Def. to Century 21's Mot., Doc. No. 12, p. 19.) Despite Plaintiffs' position, the Complaint does not allege this alternative theory of recovery. The Complaint states only that "Defendants have profited by their illegal conduct and have been unjustly enriched." (Compl. ¶43.)

The parties do not dispute that their agreement is governed by an express contract. (Compl. Ex. 2; Lewis Aff. Ex. B.) Furthermore, the contract encompasses all of the issues in dispute in this case. The terms regarding the interest rate, finance charges, notification, and other credit terms are listed in the Terms of Agreement and govern the parties' agreement. As the Complaint is currently worded, it does not state a claim for unjust enrichment against Defendant HRS, and therefore, the Court recommends that Defendant HRS' motion for judgment on the pleadings should be granted as to Count V without prejudice with leave to amend.

---

[8]The parties cite to Minnesota law in their briefs on this issue. However, as discussed earlier, it uncertain whether Minnesota or Nevada law applies to Plaintiffs' claims. The resolution of this issue would be academic for purposes of this motion because both Minnesota and Nevada law prevent an unjust enrichment claim when an express written contract governs the agreement of the parties. See Leasepartners Corp. v. Robert L. Brooks Trust, 113 Nev. 747, 755-56, 942 P.2d 182, 187 (1997).

## RECOMMENDATION

Based on the foregoing, and all of the records, files and proceedings herein, IT IS HEREBY RECOMMENDED that:

1. Defendant Century 21's Motion for Judgment on the Pleadings (Doc. No. 10) be **GRANTED** with prejudice as to Count IV, and without prejudice and with leave to amend the Complaint within twenty days as to all other Counts; and

2. Defendant HRS' Motion for Judgment on the Pleadings (Doc. No. 17) be **GRANTED** with prejudice as to Count IV, and without prejudice and with leave to amend the Complaint within twenty days as to all other Counts;

Dated: February 12, 2001

Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge

Under D. Minn. LR 72.1(c)(2) any party may object to this Report and Recommendation within 10 days after being served with a copy thereof. The party shall file with the Clerk of Court, and serve on all parties, a writing which specifically identifies those portions of this Report and Recommendation to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.